| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

United States District Court
Southern District of Texas
**ENTERED**
June 12, 2018
David J. Bradley, Clerk

| Manuel Mejias, Jr., | § | |
|---|---|---|
| Plaintiff, | §<br>§<br>§ | |
| *versus* | §<br>§ | Civil Action H-15-2853 |
| Megan J. Brennan, | §<br>§ | |
| Defendant. | § | |

## Opinion on Summary Judgment

1. *Background.*

Manuel Mejias, Jr., is a Hispanic man who has worked for the United States Postal Service since 1986. He has worked at three stations in Houston: Granville Elder, Fairview, and Windmill. Megan J. Brennan is the postmaster general.

Mejias has heard one racist comment at his most recent station – Windmill – and it was not directed at him. He says that a supervisor told another employee that she could work harder because she was Hispanic.

Mejias was married to Ann Moreno from 1982 until they divorced in 1987. They both remarried. Mejias married Deborah Kloesel in 1988, and they divorced in 2014. Kloesel also worked for the postal service, but she did not work at the same stations as Mejias.

Until 2016, Brad Ramey worked for the postal service, too. He did not work at the same station as Mejias. Kloesel and Ramey both worked with the Pasadena dispute resolution team. Neither heard Mejias's grievances.

Ramey and Kloesel spent time together outside of work. Mejias met Ramey through Kloesel. After Mejias and Kloesel separated in May of 2013, Mejias suspected that they were having an affair. He sent text and voice messages to Kloesel, discussing his suspicions.

Mejias told the union, the postal service, and United States Congressman Gene Green that he believed that Kloesel and Ramey were having an affair and

that he thought that the affair was causing the union to lose its grievances before their dispute resolution team. Kloesel explained to her supervisor and Ramey explained to a union representative that Mejias had accused them of having an affair.

Kloesel and Ramey say that they started dating in February 2014. Meanwhile, Mejias had started dating his first wife, Moreno, again. One Sunday in March, Moreno's second husband called Kloesel to tell her that Mejias and Moreno were dating. The same day, Ramey called Mejias and left two messages. In these messages, he calls Mejias "Frito bandito." Mejias says that Ramey once called him "wetback" during a telephone call.

A few days later, Mejias reported the messages to his supervisor and to the police. Warren said that the postal service could not do anything about the messages because the calls did not occur on postal service property. Ramey had called Mejias's personal cellular telephone from his personal cellular telephone.

One day, Mejias was on his postal route and saw Ramey. He reported Ramey's following him to his supervisor. He says that she ignored him. Mejias also saw Ramey outside of his house twice but he did not tell the postal service. Mejias filed a charge with the Equal Employment Opportunity Commission against the postal service for not investigating the voicemail messages because of his race.

2. *Hostile Work Environment.*

To prevail on his hostile work environment claim, Mejias must have shown that he was harassed because of his race and that the harassment was so severe and pervasive that it made him effectively unable to do his job.[1]

Mejias has not shown that Ramey's name-calling was motivated by his race. The words he chose might have been offensive, but the evidence shows that the dispute between them was about Mejias's suspicions that Ramey and Kloesel were having an affair. Nothing suggests that Ramey wanted to make Mejias's

---

[1] *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

work environment unpleasant because he was Hispanic. They were arguing about women, not mail.

Mejias has not shown that the name-calling and following were so pervasive that they affected his work environment. Ramey and Mejias never worked together. They knew each other only through Kloesel. Ramey insulted him via their personal cellular telephones. He followed him while on his route on one day. These actions were neither extreme nor work related. They were not done by a supervisor. No one at the Windmill Station made racist comments toward Mejias.

The postal service did not investigate Ramey when Mejias reported his behavior. Nothing suggests that the postal service did not act because it was discriminating against Mejias. The telephone calls occurred outside of work, and Mejias says that he saw Ramey a few times while on his route one day. It might have been a coincidence, and it stopped. If he was followed, he was not injured in his ability to deliver the mail. He says that he saw Ramey outside of his house twice, but he never reported it. Although Mejias and Ramey happened to work for the same employer, they did not know each other from work. Their dispute was personal. The postal service behaved reasonably in declining to pursue the investigation.

3. *Conclusion.*

Manuel Mejias, Jr., will take nothing from Megan J. Brennan.

Signed on June 12, 2018, at Houston, Texas.

Lynn N. Hughes
United States District Judge